IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 28 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| JACQUELINE IRELAND, § § Plaintiff, § § VS. § AMERICAN AIRLINES, INC., ET AL., § § Defendants. § | NO. 4:18-CV-208-A |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant American Airlines, Inc. ("American") for summary judgment. The court, having considered the motion, the response of plaintiff, Jacqueline Ireland, the record, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

On March 14, 2018, plaintiff filed her original complaint, naming American and American Airlines Group, Inc. ("Group"), as defendants. Doc.[1] 1. She has since twice amended her complaint. The operative pleading is her third amended complaint filed July 26, 2018. Doc. 19. American is the sole defendant, plaintiff having filed a motion to dismiss her claims against Group, Doc. 31, which the court has granted. Docs. 33 & 34.

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

In her third amended complaint plaintiff alleges that American hired her on January 22, 1996, as an aircraft mechanic. The overwhelming majority of American's mechanics are male. Her co-workers harassed her by making sexually-oriented jokes and gestures in her presence. They also tampered with her food and water, causing her to become ill on several occasions. Plaintiff complained but American did not take her complaints seriously.

Plaintiff asserts causes of action for discrimination based on sex, for sexual harassment, for hostile work environment, and for retaliation, all under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII").[2] Plaintiff also seeks a declaration that she is fit for duty and that American must reinstate her to work, but that request appears to be moot as plaintiff has returned to work.

II.

Grounds of the Motion

American alleges that plaintiff cannot make out a prima facie case in support of any of her causes of action. Specifically, plaintiff has no evidence that (1) she was subjected to unwelcome harassment because of her gender, (2) the gender harassment about which she complains affected a term,

---

[2]Although set forth separately, there does not appear to be any difference between the first and second causes of action, discrimination based on sex and sexual harassment.

condition, or privilege of her employment, or (3) American knew or should have known of the harassment and failed to take prompt remedial action. And, even if she could make out a prima facie claim, she cannot overcome American's legitimate, nondiscriminatory reason for its actions. Further, in support of her retaliation claim, she cannot show that her adverse action would not have occurred but for her protected activity.

By order signed March 26, 2019, plaintiff's counsel was allowed to withdraw. Doc. 23. Plaintiff is now proceeding pro se.

III.

Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[3] Celotex Corp., 477 U.S. at 323. If the record taken as a

---

[3] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

4

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The record establishes the following undisputed facts:

Plaintiff has been employed by American since 1996 as an aircraft maintenance technician ("AMT"). Doc. 27 at App. 010-011. AMT is a safety sensitive position. Id. at App. 020. Plaintiff began work at the Alliance facility and moved to American's DFW International Airport facility ("DFW") when Alliance closed in 2013. Id. at App. 010-011. Plaintiff worked at DFW from 2013 until she was taken out of service in August 2017. Id. In May 2018, she returned to work and transferred to the SeaTac Airport in Seattle. Id. at App. 011.

Plaintiff had no problems at work prior to May 2017. Doc. 27 at App. 062-063. Plaintiff's claims are based on five incidents involving male employees who said or did something that she says constituted sexual harassment or created a hostile work environment. Id. at App 050-051, 091-093. They are as follows:

---

[3](...continued)
explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

(1) On a single occasion on an unknown date between May and August 2017, co-worker Jared Windisch picked at the outside of his pants in the crotch area[4] while he and plaintiff were taxiing an aircraft across DFW Airport property. Windisch did not say anything to plaintiff and she does not know why he was picking at his pants, although she suspects it was to embarrass her. He made no physical contact with plaintiff and she never complained that he was making her uncomfortable. She simply looked away. She never made a written complaint to American about Windisch, but believes she identified him to her HR representative. Doc. 27, App. 036-043.

(2) Sometime in 2017 before May, an unknown employee, who was not a manager or supervisor, stood 15-20 feet away from plaintiff and grasped himself, working from his crotch down to his knee. He did not say anything to plaintiff, but obviously thought it was funny. Plaintiff turned and walked away. Doc. 27 at App. 044-050.

(3) On one occasion in 2017, Chris Constable put his hand on his crotch making the shape of a gun, simulating an erection. Plaintiff never reported this incident to American. Doc. 27 at App. 088-094.

---

[4]Plaintiff demonstrated what she meant by picking at the cloth of her shirt sleeve with her index and middle fingers and thumb. Doc. 27 at App. 042.

(4) Plaintiff believes a co-worker, Brian Nicholson, tampered with her lunches, but she never saw him do so and neither did anyone else. Plaintiff believes he put prescription laxatives in her lunch because she had encouraged people to transfer to DFW from the Alliance facility, perhaps causing Nicholson's friends to be bumped from the transfer list. Doc. 27 at App. 025-031, 044; Doc. 35 at 4, ¶ F.11.

(5) Plaintiff believes Matt Baytos tampered with her water, but she never saw him do so and neither did anyone else. Doc. 27 at App. 028, 031-033. She does not know why he did that. Id. at App. 044.

Despite the foregoing, at all times, plaintiff believed that she was able at all times to perform her job competently. Doc. 27 at App. 087. She always completed her work on time and did not require any accommodation to do so. Id.; Doc. 35 at 3, ¶ F.7.

Plaintiff had a number of communications with Laura Kobe ("Kobe") in American's human resources department. Doc. 27 at App. 097. On August 24, 2016, plaintiff emailed Kobe to say that she was "95% sure" that one of her co-workers had put lice in her hair "but [she] had no proof." Id. at App. 098, 106. When questioned, plaintiff said an unknown man had thrown lice in her hair while she was at a public park in Keller, Texas. Id. at App. 098. Kobe investigated, but was unable to substantiate any of the

allegations. Id. at App. 098-099. Ultimately, plaintiff admitted that she was mistaken in believing American had anything to do with the lice incident. Id. at App. 057-058.

On January 14, 2017, plaintiff emailed Kobe to ask for help with certain female gate agents in Jackson Hole, Wyoming, that plaintiff said were harassing her. Kobe tried to set up meetings with plaintiff on numerous occasions, but plaintiff advised she would handle the matter herself. Kobe did contact the Jackson Hole general manager, but she was not familiar with plaintiff. Doc. 27 at App.099, 114-19.

On June 8, 2017, plaintiff emailed Kobe to report her belief that someone tampered with her food. On July 2, 2017, plaintiff emailed to say that someone had tampered with her water. Kobe met with her several times and interviewed numerous employees, but could not corroborate plaintiff's claims. Doc. 27 at App. 099-101, 120-38.

On July 24, 2017, plaintiff emailed Kobe to ask if other employees' email had been hacked, opened, and read. Doc. 27 at App. 101, 139.

On July 26, 2017, plaintiff emailed Kobe asking what she needed to do to take her harassment case off base because "[t]his group is continuing their harassment" and "obviously feel that there will be no repercussions for their behavior." Doc. 27 at

8

App. 101, 140. That same day, she emailed Kobe and an employee assistance counselor to ask that she be transferred to a special assignment in a different place and saying she would meet with the counselor to seek assistance. Id. at App. 102, 141.

On July 29, 2017, plaintiff emailed Kobe to express doubts about whether she could or should perform safety sensitive aspects of her job, stating that she and her husband thought she needed a leave of absence and counseling. Id. at App. 102, 142. Her request for leave of absence was granted. Id. at App. 102. On August 2, 2017, plaintiff emailed Kobe to say that her husband thought she had mental problems and that both of them had spoken to a psychologist. Id. at App. 143.

On August 4, 2017, plaintiff emailed Kobe to say she was going to press charges with the DFW Airport Police against a co-worker for poisoning her food. Doc. 27 at App. 102, 144. Kobe received a call from the DFW Airport Police advising that there was no basis for the charges and they did not intend to take any action. Id. at App. 103.

On August 8, 2017, plaintiff emailed Kobe to say that she was no longer going to therapy because she believed nothing was wrong with her mental status. Doc. 27 at App. 103, 146. On September 1, 2017, Kobe sent plaintiff a letter advising that she would need to undergo an independent medical examination ("IME")

9

to determine her fitness for duty before she would be allowed to return to work. Id. at App. 103, 147. On September 25, 2017, plaintiff was examined by Mark J. Blotcky, M.D. ("Blotcky"), who determined that she was not fit for duty due to severe psychiatric disorder. Id. at App. 103, 148-52.

Plaintiff independently selected and saw several psychiatrists in an attempt to get a report that she was fit for duty. She has sued at least one of them, Dr. Camp, who diagnosed plaintiff with a delusional disorder and prescribed risperdone for her. Doc. 27 at App. 013-019. On April 11, 2018, plaintiff was deemed fit to return to duty and returned a short time later. Doc. 27 at App. 103; id., Ex. N; Doc. 35 at 5, ¶ F.22.

There were no male AMT employees of American who were substantially similar to plaintiff who were treated more favorably than she was. Doc. 35 at 4, ¶ F.8. There were no male AMT employees of American who expressed reservations about the ability to perform the safety sensitive aspects of work who were not requested to have a fit-for-duty examination. Id., ¶ F.10. A request to take a fitness for duty examination is not an ultimate adverse employment action under Title VII. Id., ¶ F.20.

After plaintiff complained of sexual harassment, American took her complaint seriously. Doc. 35 at 4, ¶ F.13. American promptly and thoroughly investigated plaintiff's complaints,

interviewing managers and co-workers likely to know about the issues plaintiff raised, including every witness plaintiff identified. Id., ¶¶ F.14-16. Despite its prompt and thorough investigation, American was not able to corroborate plaintiff's complaints that she was being sexually harassed or that her food and water were being tampered with. Id. at 5, ¶F.17. After plaintiff complained and American conducted its investigation and granted plaintiff a leave of absence she requested, plaintiff was not subject to any more acts of harassment. Id., ¶ F.18.

V.

Analysis

A. Harassment/Discrimination Claims

To establish a prima facie claim for discrimination under Title VII plaintiff must show that: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action by her employer; and (4) she was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). To satisfy the "similarly situated" requirement, the circumstances of the plaintiff and her comparator must be more than similar, they must be "nearly identical" from the perspective of their employer at the time of the relevant

employment decision. Berquist v. Washington Mut. Bank, 500 F.3d 344, 353-54 (5th Cir. 2007); Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004).

To prove her claim for hostile work environment, plaintiff must show: (1) plaintiff belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of employment; and, (5) defendant knew or should have known about the harassment and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). To be actionable, the harassment must be both objectively and subjectively offensive. Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005). It must be sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Factors considered include the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." Id. at 788.

In this case, there is no evidence that plaintiff suffered any harassment or discrimination on account of her being female. At best, plaintiff herself can only speculate as to why she thinks certain things happened to her. She has not shown that she was similarly situated to any other employee who was treated more favorably.[5] Further, she has not come forward with any evidence to show that any harassment, assuming it occurred, affected a term, condition, or privilege of her employment. Rather, plaintiff testified that she was always able to perform her job duties. There is no evidence of any activity sufficient to amount to an abusive work environment; plaintiff refers only to random, isolated events. Finally, plaintiff has not pointed to any evidence that American knew or should have known of any particular harassment and failed to take prompt remedial action. In sum, there is no genuine fact issue to preclude judgment for American on the harassment/discrimination and hostile work environment claims.

B. Retaliation

To state a claim for retaliation under Title VII, plaintiff must allege that she participated in an activity protected by Title VII, her employer took an adverse employment action against

---

[5] In fact, she has stipulated that she was not similarly situated to any male ATM who was treated more favorably than she was. Doc. 35 at 4, ¶ F.8.

her, and a causal connection exists between the protected activity and the adverse employment action. McCoy, 492 F.3d at 557. "Protected activity" means any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, hearing or proceeding under Title VII. Lopez v. Kempthorne, 684 F. Supp. 2d 827, 862 (S.D. Tex. 2010). For there to be a causal connection, the employer must know about the employee's protected activity. Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003). Temporal proximity between the protected activity and the adverse employment action, by itself, is insufficient to create a genuine issue of material fact as to causation. Lopez, 684 F. Supp. 2d at 863 (citing cases). Once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, plaintiff must offer some evidence from which to infer that retaliation was the real motive. McCoy, 492 F.3d at 562.

Plaintiff has not come forward with any evidence to show that she engaged in any protected activity for which she was punished. But, even assuming plaintiff had made a prima facie showing of retaliation, American has come forward with a legitimate, non-retaliatory reason for plaintiff's being required to take a fitness for duty examination. Plaintiff herself raised

the issue of whether she was competent to engage in her assigned work as an AMT. To show that defendant's reason was actually a pretext for discrimination, plaintiff must show that she would not have been subject to this requirement "but for" the retaliatory reason. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). For the reasons discussed, plaintiff has not, and cannot, make that showing.

VI.

Order

The court ORDERS that American's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on her claims against American; and, that such claims be, and are hereby, dismissed with prejudice.

SIGNED May 28, 2019.

_____
JOHN McBRYDE
United States District Judge